I PATRICIA RIVET MURRAY, Judge.
On June 3, 1999, the State charged Arthur Major with possession of cocaine in the amount of twenty-eight or more but less than two hundred grams of cocaine, a violation of La. R.S. 40:967.[1] On June 8, 1999, Mr. Major was arraigned and pled not guilty. On November 12, 1999, the trial court denied his motion to suppress the evidence. Following a two-day jury trial on January 19 and 20, 2000, a twelve-member jury found him guilty as charged. On March 27, 2000, the trial court denied his motions for post-judgment acquittal and new trial. On that same day, the trial court sentenced him to fifteen years at hard labor without benefit of probation, parole or suspension of sentence. The trial court subsequently granted his motion for appeal. Mr. Major’s appointed counsel filed a brief assigning one error, and Mr. Major filed a pro se brief assigning an additional error. For the reasons that follow, we affirm.

STATEMENT OF FACT

This case arises out of a narcotics investigation headed by Detective Dennis Bush of the New Orleans Police Department. That investigation culminated in the .[¿arrests of Mr. Major and Herbert Phillips on May 21, 1999. On that date, the target of the investigation was Mr. Major; the targeted locations were two adjacent residences, 1423 Eagle Street and 8738 Jeannette Street. Although these two residences have different street addresses, they are physically located directly next door to each other on the corner of Eagle and Jeannette Streets. Between the two residences is a yard in which junk vehicles are parked, including Mr. Major’s secondary vehicle.
Detective Bush testified that he had observed Mr. Major traversing between *629 those two residences and thus believed that Mr. Major was using both residences to conduct illegal narcotics sales. Based on that belief, Detective Bush obtained a search warrant for both residences.
Armed with those search warrants and accompanied by a five member back-up team, Detective Bush proceeded to the targeted locations. The detectives were all dressed in street clothes and driving everyday vehicles. Upon arrival at the targeted locations, Detective Bush observed that Mr. Major’s primary vehicle, a black Pontiac Sunbird, was not present and thus believed it was unlikely that Mr. Major was present. For that reason, he decided to delay executing the warrants.
Concealing his presence about a block from the targeted locations, Detective Bush conducted additional surveillance for about forty minutes before executing the warrants. From his concealed location, Detective Bush had a view of the entrance to both locations. During that additional surveillance period, he saw no one enter or exit either location. He then observed Mr. Major’s black car drive up and park in front of the Eagle Street location and Mr. Major and his four-year old son exit the car and enter the Eagle Street location using a key. Within five minutes, he saw Mr. Major exit the Eagle Street location, apparently leaving the 13child inside alone, and enter the Jeannette Street location using a key. Within five minutes, he saw Mr. Major exit the Jeannette Street location and return to the Eagle Street location. After observing Mr. Major’s traverse between the two locations, Detective Bush decided to execute the search warrants and radioed his back-up team for assistance.
The detectives first executed the warrant on the Eagle Street location, which is where Mr. Major’s residence was located.[2] The entrance to the Eagle Street residence had both a wooden front door, which was ajar, and an iron front door, which was shut yet unlocked. From their vantage point; the detectives could see Mr. Major standing in the front room with his back to the front door. After knocking and announcing, the detectives entered and secured Mr. Major. Detective Bush described Mr. Major’s reaction as very nervous and startled. Detective Bush then asked Mr. Major whether he had a key to the Jeannette Street location. Although Mr. Major denied having a key, Detective Bush recovered a set of keys from Mr. Major’s pocket. One of those keys unlocked the front door of the Jeannette Street location. Mr. Major was detained in the Eagle Street location while Detective Bush, accompanied by Detectives Jeffery Keating and Paul Noel, relocated to the Jeannette Street location.
After knocking and announcing without getting any response, the detectives entered the Jeannette Street location using the key obtained from Mr. Major’s pocket. The detectives described the condition of this residence as deplorable, full of junk, “real dusty,” and uninhabited. Upon entering this rather large residence, the detectives split up with one going left, one going right, and one going to the Drear. Detective Keating testified that he went to the right and that he found in the front room in plain view, tucked in a corner, a large, clear plastic bag containing a white substance (which tested positive for cocaine), some plastic sandwich bags, a scale, a police scanner, a radio, an open box of baking soda, and a razor blade. The white substance was described as being wet and mushy. Both the scale and razor blade *630 were covered with a white powdery substance (which also tested positive for cocaine).
In making a safety sweep of the rear of the residence, Detective Noel testified that he found Mr. Phillips crouched' down hiding behind a mattress that was leaning up against the wall. Detective Noel further testified that when he patted Mr. Phillips down he found no keys, weapons, contraband, or currency.
After completing the search of Jeannette Street location, Detective Bush returned to the Eagle Street location. A drug detection dog alerted the detectives to a stereo speaker inside of which they found one hundred and sixty-four dollars in various denominations. Near the speaker they found some small coin envelopes. They also found two Entergy bills for the Eagle Street address for the months of April and May 1999 in Mr. Major’s name. The only other evidence they confiscated at the Eagle Street location was the set of keys, noted above, and seventy-two dollars that was found in Mr. Major’s pockets.
Both Mr. Major and Mr. Phillips were arrested and charged with the same offense. At trial, Mr. Phillips testified for the prosecution. Mr. Phillips told the jury that in exchange for his testimony, the State reduced the charge against him to simple possession of cocaine. He also acknowledged that this was his second drug-related conviction. He further testified that he lived a block away from Mr. Major and that the reason he went to Mr. Major’s house on the day they were | ¡¡arrested was to “to score” crack cocaine. According to Mr. Phillips, when he arrived that day, Mr. Major was not home. One of Mr. Major’s neighbors, however, asked him to wash their car. Before he finished with the neighbor’s car, Mr. Major arrived and told him that the cocaine was not ready for distribution because it had not yet dried. Mr. Phillips testified that he also observed Mr. Major move the cocaine from the Eagle Street to the Jeannette Street location and that when the detectives arrived he was still waiting for the cocaine to dry.
The trial court qualified Officer Harry O’Neal as an expert in the identification and analysis of controlled substances. Officer O’Neal testified that the white powdery mass recovered from the Jeannette Street location weighed seventy-three grams. He further testified that both that large mass and the white powdery substance covering the razor blade and scale tested positive for cocaine. He still further testified that the large mass was mushy apparently because it had not been fully cooked so as to complete its metamorphosis. On cross-examination, he acknowledged that he did not test the purity of the mass and that he could not pinpoint the exact portion of the mass that he tested.
Mr. Major’s sole witness was his seventy-one year old grandmother, Ms. Doretha Cary. She testified that she resides in New Orleans and owns several properties, including the Eagle and Jeannette Street residences. She further testified that Mr. Major resides in the Eagle Street location and that he has keys to all her properties because he routinely does repair work on the properties and helps her rent them.[3]
I ^PATENT ERROR
Complying with La.C.Cr. P. art. 920, we have conducted a patent error *631 review of the record on appeal and found a sentencing error. Mr. Major was convicted of possession of cocaine in an amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967 C. Pursuant to La. R.S. 40:967 F(l)(a), the applicable sentence for that offense is imprisonment at hard labor for not less than ten years, nor more than sixty years, and a fine of not less than fifty thousand dollars, nor more than one hundred thousand dollars. La. R.S. 40:967(G) requires that the adjudication of guilt or imposition of a sentence under L¿. R.S. 40:967(F) “shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.” By failing to impose a fine on Mr. Major, the trial court imposed an illegally lenient sentence. We, however, decline to remand for correction of that patent sentencing error.
Although we recognize that State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, arguably calls into question the jurisprudential rule against correcting a patent sentencing error favorable to the defendant when the state fails to appeal,[4] we read the holding in Williams as applying only to sentencing errors subject to automatic correction under La. R.S. 15:301.1(A). Our holding is consistent with that espoused by the dissent in State v. Paoli, 2001-1733, p. 1 (La.App. 1 Cir. 4/11/02), 818 So.2d 795, 800-01(Guidry, J., dissenting); as Judge Guidry, joined by Judge Pettigrew, aptly stated:
|7Although State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, arguably cast some doubt upon the reasoning in State v. Fraser, 484 So.2d 122 (La.1986), it does not overrule Fraser and I do not interpret Williams as applicable to sentencing errors of a type different than those subject to automatic correction under La. R.S. 15:301.1.
In this case, the patent sentencing error — a mandatory fine — falls under La. R.S. 15:301.1(B). See Williams, 2000-1725, pp. 10-11, 800 So.2d at 799(citing, by way of example, failure to impose mandatory fine). La. R.S. 15:301.1(B) provides that an amendment of a sentence to conform with an applicable statutory provision may be made on the trial court’s own motion or if the district attorney seeks such an amendment; however, La. R.S. 15:301.1(D) provides that such action must be taken within one hundred and eighty days of the initial sentencing. Construing those provisions together,' the appellate court in State v. Esteen, 2001-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, declined to remand to correct an illegally lenient sentence resulting from failure to impose a mandatory fine given the state’s failure to object before La. R.S. 15:301.1(D)’s one-hundred eighty day period elapsed. We likewise conclude, that given the state’s failure to seek relief in either the trial court or this court, it is inappropriate to remand for correction of the illegally lenient sentence resulting from the failure to impose a fine.
PRO SE ASSIGNMENT OF ERROR
In his sole pro se assignment of error, Mr. Major argues that the evidence is insufficient to support the conviction. The standard for reviewing a claim of insufficient evidence is well settled.[5] In this *632 case, the trial court expressly noted in 1 sdenying Mr. Major’s motion for new trial that the evidence was primarily circumstantial. The standard of review of circumstantial evidence is also well settled.[6] Simply stated, all evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
In this case, the elements of the charged offense are two-fold: (1) Mr. Major knowingly or intentionally possessed cocaine; and (2) the amount of cocaine he possessed was between twenty-eight and two hundred grams. La. R.S. 40:967(F)(l)(a). Such possession can be either actual (when the contraband is found on the defendant’s person), or constructive (when the circumstances show that the contraband is subject to the defendant’s dominion and control). State v. Trahan, 425 So.2d 1222 (La.1983). The determination of whether there is sufficient possession to convict depends on the facts peculiar to each case. State v. Kingsmill, 514 So.2d 599, 601 (La.App. 4 Cir.1987).
The courts have enumerated six factors to be considered in determining whether it is reasonable to infer from the evidence that defendant had dominion and control; to wit: (1) defendant’s knowledge that illegal drugs are in the area, (2) defendant’s relationship with a person found to be in actual possession, (3) defendant’s access to the area where the drugs were found, (4) evidence of defendant’s recent drug use, (5) defendant’s physical proximity to the drugs, and |n(6) any evidence that drug users frequented the particular location. Kingsmill, 514 So.2d at 602; see also State v. Chambers, 563 So.2d 579, 581 (La.App. 4 Cir.1990).
Applying those factors to the instant case clearly establishes that it was reasonable for the jury to infer that Mr. Major had dominion and control over the mass of cocaine recovered from the uninhabited Jeannette Street location and thus was in *633 constructive possession of the seventy-two grams of cocaine.
First, Mr. Major’s knowledge that illegal drugs were in the area was established by Mr. Phillips’ testimony that he went to Mr. Major’s residence that day to score cocaine and that he saw Mr. Major carry the cocaine from one location to the other. Likewise, Detective Bush testified that he saw Mr. Major traverse between the two locations shortly before the warrants were executed.
Second, Mr. Major’s access to the area where the cocaine was found was established. Moreover, at the time of his arrest, Mr. Major had a key in his pocket that unlocked the door to the Jeannette Street location.
Third, Mr. Major’s physical proximity to the drugs was established by proof that he resided in the adjacent Eagle Street location. That fact was proven by the two Entergy bills found at that location in his name, coupled with the testimony of Mr. Phillips and Ms. Cary (his grandmother) that he resided there. As noted above, Mr. Major was seen by both Mr. Phillips and Detective Bush going back and forth between the Jeannette and Eagle Street residences. This was one of the reasons that Detective Bush obtained search warrants for both locations.
Finally, evidence that drug users frequented the area was established through Mr. Phillips’ testimony that he went to Mr. Major’s residence “to score” cocaine the day they were arrested and that he previously obtained cocaine from Mr. |inMajor, often in exchange for repair work on Mr. Major’s boat or residence. This factor was also established by the other evidence the detectives confiscated in executing the search warrants (i.e., the plastic baggies, scale, razor blade, baking soda, currency, police scanner, and small coin envelopes). As discussed elsewhere, that array of items is often noted to be associated with drug distribution. We thus find the insufficiency of the evidence argument raised by Mr. Majors unpersuasive.
ASSIGNMENT OF ERROR BY COUNSEL
In this assignment, Mr. Major, through appointed counsel, contends that the trial court erred in denying his motion for mistrial based upon the improper admission at trial of other crimes evidence.[7] He further contends that evidence constituted a direct comment on his guilt and prejudiced him in the eyes of the jury and thereby deprived him of a fair trial. The gist of Mr. Major’s argument is that al *634 though he was charged and convicted of possession, the state improperly introduced evidence proving his guilt of another crime: distribution. Particularly, he objects to portions of testimony given by three of the state’s witnesses: Detective Bush, Detective Keating, and Mr. Phillips.
In As to Mr. Phillips’ testimony, Mr. Major’s argument is based on the following:
[Mr.] Phillips, in addition to stating that he went to appellant’s home on the date of the search to purchase cocaine, was also permitted to tell the jury, on redirect no less, that over the course of years he had obtained cocaine from appellant, often in exchange for repair work on appellant’s boat or home.
Although the testimony of Mr. Phillips that Mr. Major contends was improperly admitted was other crimes evidence, that testimony was not objected to at trial. That issue cannot be raised for the first time on appeal. La.C.Cr.P. art. 841. Regardless, even if the issue was preserved for appeal, defense counsel elicited the same testimony in cross-examining Mr. Phillips.
As to the testimony of the detectives, Mr. Major concedes that the detectives were permitted to testify that cocaine was recovered along with a box of baking soda, plastic baggies, a police scanner, a razor blade, and a scale. He also concedes that mentioning that those items were recovered along with the cocaine, however, was permissible because that evidence was part of the res gestae.[8] He objects to the state’s repeated use of this res gestae evidence as an attempt to prove that he was a full-time cocaine dealer of long standing. As to Detective Bush’s testimony in particular, he contends that the state passed the limit by having him testify that these items were significant because they revealed “packing and cooking narcotics for street-level distribution,” that the scale is “used to weigh and measure cocaine for street level,” to opine that you could make approximately “one [1ghundred rocks out of this” that you could sell for “ten to twenty dollars” each, that the coin envelopes were consistent with street-level narcotics packaging as well, and that the baggies were commonly used in “selling it for small increments on the street.” Similarly, as to Detective Keating’s testimony, Mr. Major contends that the state passed the limit by having him testify regarding the significance of some of the seized items; to wit: as to the scanner, that “a lot of drug dealers they try to monitor our stations,” and as to the sandwich baggies, that “they’ll cut the corners out of the sandwich bags ... they’ll put like a $10, $20 piece of crack in the corner of the bag, cut it tie it in a little knot .... that’s how they’ll sell it on the street.” Detective Keating was also improperly permitted to opine that appellant was not “a user” of narcotics.
In analyzing Mr. Major’s argument regarding the detectives’ testimony, we find it necessary to subdivide it into four components. First, he argues that the testimony was improper other crimes evidence. Second, he argues that such other crimes evidence was outside the scope of the res gestae exception. Third, he argues that the testimony was not relevant to the crime for which he was charged. Finally, he argues that the testimony was improper expert opinion testimony on the ultimate *635 issue of guilt. We separately address each of these components.
Mr. Major first argues that the detectives’ testimony is “other crimes” evidence. Contrary to his contention, the detectives’ testimony at issue is not other crimes evidence. That testimony was not directed to Mr. Major’s activity and did not entail unambiguous references to other crimes committed by Mr. Major. A more appropriate objection to the detectives’ testimony is that it was improper opinion testimony. Indeed, the defense attorney asserted that objection at several points during the trial, yet the trial court overruled it. Nonetheless, any error in | ^failing to recognize this testimony was a form of opinion testimony was harmless error in that both detectives were established at trial to have extensive experience in narcotics investigations. That testimony was elicited based on the detectives’ years of experience as narcotics officers.
Mr. Major’s second argument is that, although the detectives’ testimony regarding what was found along with the cocaine was admissible res gestae evidence, their testimony regarding their conclusions about what was found is outside the scope of the res gestae exception. Although Mr. Major seeks to separate that tangible res gestae evidence (the baggies, scale, baking soda, razor blade, and police scanner) from the detectives’ opinion testimony and to argue that the latter is another form of inadmissible other crimes evidence, we find that argument unavailing. As noted, the detectives’ testimony does not refer to any prior conduct, much less crimes, committed by Mr. Major. Rather, the detectives’ testimony, as the state contends, simply addresses the typical use of the items found along with the cocaine for distribution. Given the large quantity of cocaine and the tangible evidence confiscated with the cocaine, the state argues that the jury would have made the same inferences regarding Mr. Major regardless of the detectives’ opinion testimony regarding the typical use of that tangible res gestae evidence for the manufacture and distribution of cocaine. Hence, the state argues any error in introducing such opinion testimony was harmless. We agree.
Mr. Major’s third argument is a relevancy argument; namely, he argues that the evidence in question was not relevant to the crime for which he was charged.[9] | ]4A similar relevancy argument was asserted by the defendant in State v. Rochon, 98-717 (La.App.5 Cir.3/10/99), 733 So.2d 624. There, the defendant argued that a sergeant’s opinion testimony articulating a “possession with intent to distribute” scenario was improper and prejudiced the jury because it led them to infer that defendant “was guilty of a crime more serious than that with which he was charged.” 98-717 at p. 12, 733 So.2d at 632. Agreeing with the defendant that the sergeant’s testimony regarding distribution was irrelevant insofar as the only issue was whether the defendant was in possession of cocaine, the court nonetheless concluded that it was harmless error since the sergeant’s testimony was of minimal importance to the state’s case. In so finding, the court cited the following factors enumerated in State v. Wille, 559 So.2d 1321, 1332 (La.1990), for determining whether *636 the erroneous admission of irrelevant evidence is harmless error: (a) the importance of the witnesses’ testimony in the prosecution’s case, (b) whether the testimony was cumulative, (c) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (d) the extent of cross-examination otherwise permitted, and (e) the overall strength of the prosecution’s case. Id.
Applying those factors to the detectives’ testimony in this case regarding the typical use of the array of items found along with the cocaine for street level distribution, we conclude, as the state contends, that even assuming such evidence was irrelevant, any error in admitting it was harmless.[10] The jury, as outlined 115above, was presented with sufficient other evidence supporting Mr. Major’s constructive possession of the cocaine. Given the overall strength of the prosecutor’s case and the large amount of cocaine confiscated (seventy-two grams), the detectives’ testimony was of minimal importance. Mr. Major’s relevancy argument is not persuasive.
Mr. Major’s final argument is that the objectionable evidence is, in essence, opinion testimony on the ultimate issue of guilt. That such opinion testimony indicated he was guilty of a more severe crime than he was charged with, he contends, makes it more objectionable. Contrary to Mr. Major’s contention, the detectives did not opine as to his guilt or innocence; they merely opined that they recognized from their past experience in narcotics cases the tangible evidence recovered along with the cocaine as an array of items commonly used together for drug distribution.
The jurisprudence Mr. Major collects in his brief in support of this final argument is identical to that set forth in State v. Johnson, 2000-0056 (La.App. 4 Cir. 11/29/00), 780 So.2d 403, writ denied, 2000-3547 (La.11/9/01), 801 So.2d 358. Although that line of jurisprudence stands for the proposition that an officer’s testimony on the ultimate issue of guilt is improper, the detectives’ testimony in this case, as in Johnson, supra, “did not give the jury an opinion as to the defendant’s guilt or innocence, only that the paraphernalia confiscated in the case was consistent with paraphernalia used in narcotics distribution.” 2000-0056 at p. 28, 780 So.2d at 417. Moreover, the detectives’ testimony “assisted the jury in understanding how cocaine is packaged for retail sale. Such testimony was helpful to the jury because of their lack of exposure to narcotics trafficking.” Id. Such testimony was also helpful to the jury in determining whether Mr. Major’s denial |1fiof guilt for the crime charged was credible. Therefore, we find Mr. Major’s final argument unpersuasive.

DECREE

For foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. As noted elsewhere, co-defendant, Herbert Phillips, was arrested at the same time as Mr. Major; they both were charged with the same offense. On the first day of the trial, the State amended the charge against Mr. Phillips to simple possession of cocaine, La. R.S. 40:967(C)(2). Mr. Phillips pled guilty and was sentenced to six months.

. Upon approaching, the officers spotted an unidentified subject sitting on the steps of the Jeannette Street location. That subject was detained and ultimately released.

. Mr. Major also introduced the plea agreement between the state and Mr. Phillips. Although Mr. Major stresses the fact that the state reduced the charges against Mr. Phillips to simple possession on the first day of the trial, the record reflects that the trial court found probable cause against Mr. Phillips only for attempted possession.

. The settled jurisprudential rule pre-dating State v. Williams, 2000-1725 (La. 11/29/01), 800 So.2d 790, was that it is inappropriate to correct a patent error favorable to defendant when the defendant was the sole appellant. State v. Hills, 626 So.2d 452, 453 (La.App. 4 Cir. 10/28/93)(citing State v. Fraser, 484 So.2d 122 (La.1986)).

. In evaluating whether evidence is constitutionally sufficient to support a conviction, an *632 appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Scott, 97-0028 (La.App. 4 Cir. 3/18/98), 709 So.2d 339. However, an appellate court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). An appellate court is not permitted to consider just the evidence most favorable to the prosecution, but it must consider the record as a whole since that is what a rational trier of fact would do. State v. Harge, 98-1321 (La.App. 4 Cir. 2/17/99), 730 So.2d 983. If a rational trier of fact could disagree as to the interpretation of the evidence, the view of the rational trier of fact of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra. An appellate court is not called upon to determine if it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La.1992).

. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. The circumstantial evidence rule set forth in La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984).

. La.C.Cr.P. 770 mandates a mistrial whenever the judge, district attorney, or a court official during trial or in argument refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, a police officer is not a "court official” under Article 770. State v. Harper, 430 So.2d 627 (La. 1983); State v. Torres, 580 So.2d 1064 (La.App. 4 Cir.1991). In the case of a police officer, Article 771 applies rather than Article 770. The decision to grant a mistrial is discretionary and is appropriate only when an admonishment cannot cure the error. State v. Goods, 403 So.2d 1205 (La.1981). A mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to the defendant which effectively deprives him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982). The trial court’s ruling on whether or not to grant a mistrial for a comment made by a police officer referring to other crimes evidence should not be upset absent a clear abuse of discretion. State v. Nuccio, 454 So.2d 93 (La.1984). Errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986). Further, an admonishment under Article 771 is not necessary unless the remark constitutes an unambiguous reference to other crimes. State v. Hayes, 414 So.2d 717 (La.1982); State v. Walker, 593 So.2d 818 (La.App. 4 Cir.1992).

. The Legislature has codified the res gestae exception in La. C.E. art. 404(B), which provides that other crime evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” In so doing, the Legislature departed from the ambiguous phrase res gestae. Nonetheless, for ease of reference we use that term in discussing Mr. Major's argument.

. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 401. As a general rule, all relevant evidence is admissible at trial. La. C.E. art. 402. An exception is recognized, however, if the probative value of relevant evidence is outweighed by its potential for prejudice or confusion. La. C.E. art. 403.

. In addressing this issue pre-trial on a defense oral motion in limine to exclude any reference to distribution, the trial court expressed the view, albeit without deciding the issue, that such evidence might be admissible, stating that "individuals who possess that kind of quantity of drugs possessed those drugs to distribute the same and not possession of those drugs for their own use as opposed to someone who possessed a small quantity which is why I think the law — if you possess small quantities, evidence of distribution is inadmissible. But if you possess a large quantity of drugs, evidence of distribution is admissible.”