EDWIN A. LOMBARD, Judge.
|, The defendant, Jason Dauzart, appeals his conviction and sentence for possession of cocaine. After review of the record in light of the applicable law and arguments of the parties, we affirm the defendant’s conviction and sentence.

Relevant Facts and Procedural History

In July 2009, Detective Todd Durel of the New Orleans Police Department (NOPD) Fifth District Narcotics Unit received a hotline complaint of possible narcotics trafficking at 1823 North Galvez Street. The complaint indicated that *1217 drugs were being sold at that address by a black male named Jason who had medium length dreadlocks, some facial hair, and was generally attired in white tee shirt and blue jeans. Accordingly, Detective Durel set up surveillance of the area and saw several men and women loitering in front of the residence, including the defendant who matched the description in the complaint. During the surveillance, several transactions were observed by the defendant and visitors to the location wherein the defendant either reached into his pocket and retrieved an item for the visitor or went into the residence and returned with an item for the visitor. Subsequently, Detective Durel conducted a controlled purchase using a confidential informant. Detective Durel observed the transaction between the defendant and the confidential informant (Cl) and, upon testing, the object given to |2the Cl by the defendant was revealed to be cocaine. Detective Durel then obtained a search warrant for 1823 North Galvez Street. On July 26, 2009, the defendant was observed in front of the residence but when Detective Durel left the area to prepare for execution of the search warrant, Detective Laurence Jones (who remained on site conducting surveillance) informed him that the defendant had left the area on a bicycle. Detective Durel opted to execute the search warrant and, prior to entering the residence, had the people loitering in front of the residence secured. The police officers entered the residence under the assumption that the residence was empty but found the defendant’s mother, Diane Jaekson, and several young children in the kitchen. The officers informed Ms. Jackson that they had a warrant to search for narcotics and a K-9 unit was brought into the residence. The dog alerted by a dresser in the front bedroom and eleven individually wrapped pieces of crack cocaine were found in the dresser drawer. Although children’s clothing and shoes were found in the bedroom, men’s clothing was found in the dresser as well as a Criminal District Court subpoena in the defendant’s name with 1823 North Galvez Street as the defendant’s address. The officers then conducted a systematic search of the residence. No other drugs were found, but a box of .45 caliber bullets was found in a closet in the front bedroom. Women’s clothing was found in the second bedroom, along with a Cox cable bill in the name of Diane Jackson and bearing the North Galvez Street address.
The officers advised Ms. Jackson that narcotics had been found and of her Miranda rights. Ms. Jackson indicated that she understood her rights and the officers asked if she could contact the defendant and ask him to return to the residence. She called her son and told him the police wanted him to return to the residence. She advised the defendant that if he came back, he would be the only Rperson arrested. Ms. Jackson then gave the telephone to Lieutenant Ceasar Ruffin, Detectives Durel and Jones’ supervisor, who spoke with the defendant. Lieutenant Ruffin told the defendant that he needed to return to the residence but the defendant refused. He then informed the defendant that if he did not return, his mother would be arrested. Lieutenant Ruffin gave the phone back to Ms. Jackson, who again asked the defendant to return home but the defendant refused and hung up. The police officers then advised Ms. Jackson again of her Miranda rights and arrested her for possession of narcotics. Detective Durel subsequently obtained an arrest warrant for the defendant for possession with the intent to distribute cocaine. The defendant was arrested one month later.
On September 15, 2009, the defendant was charged by bill of information with possession with the intent to distribute *1218 cocaine.[1] The defendant pleaded not guilty at his arraignment on September 18, 2009. After a preliminary and suppression hearing on February 10, 2010, the trial court found probable cause and denied the defendant’s motion to suppress evidence. The defendant was found guilty as charged after a jury trial on April 21, 2010. On April 29, 2010, the trial court sentenced the defendant to serve eight years at hard labor, with credit for time served. A multiple bill hearing was conducted on August 20, 2010. The trial court found defendant to be a double offender, vacated the prior sentence and resentenced the defendant to serve eighteen years at hard labor, with credit for time served.
At trial, the defendant and the State stipulated that if John Palm, a NOPD criminologist, were to testify, he would state that the substances found in the front 14bedroom dresser tested positive for crack cocaine. Detectives Durel and Jones testified to the above-stated facts. Lieutenant Ruffin also testified, stating that he participated in the execution of the search warrant and corroborating the testimony of Detectives Durel and Jones.
Diane Jackson testified that on July 26, 2009, she was at home watching her grandchildren and her next door neighbor’s children. She was cooking in the kitchen when the police busted the front door open. The officers told her that they had a search warrant and asked for her name and address. The police brought in a K-9 dog and searched the house. Ms. Jackson stated that when Lieutenant Ruffin told her they were looking for her son, she told him that only she and her grandchildren lived in the house. She testified that the defendant did not live with her, although she acknowledged he had personal belongings in the house. She stated that in accordance with Lieutenant Ruffin’s instructions she contacted her son, advised him that the police were at the house and that he should return, but the defendant failed to adhere to her request. Ms. Jackson declared she was not aware of the narcotics in her house or of anyone selling drugs from her house. She stated that the defendant often visited her because his children lived with her. According to Ms. Jackson, her grandchildren share the front bedroom while she sleeps in the second bedroom. Ms. Jackson stated that she owned a .45 caliber Colt at one time. She also testified that she never saw her son selling drugs from her house, although she knew there were several people who hung out in front of her house who she assumed were neighbors. Although Ms. Jackson did not remember if Jason visited her on July 17, 2009, she was certain that he was not at her house on July 26, 2009. Ms. Jackson testified that the defendant was twenty-six years old, did not work, used to live with her on an occasional basis, and never had a steady place to live. |flThe children had been in Ms. Jackson’s care since infancy and, although the defendant often came over to help get them ready for school and occasionally gave her money for them, Ms. Jackson did not know where or with whom the defendant resided.
Nicole Roy testified that her mother lived near Ms. Jackson and that she visited her when she visited her mother, generally on a daily basis. Ms. Roy stated that she knows the defendant. She testified that she visited Ms. Jackson on July 17, 2009, and that the defendant was not there. Ms. Roy stated that there were several people who hung out in front of Ms. Jackson’s house, and a couple of them fit the complainant’s description. Ms. Roy had seen people selling drugs in the area but did not see the defendant selling drugs on July 17. *1219 Ms. Roy stated she was visiting her mother on July 26 and saw police at Ms. Jackson’s house later in the day. She and her mother went over to Ms. Jackson’s house to see what was going on. Ms. Roy testified that a police officer came out and made a statement that someone needed to contact the defendant and tell him to come home or his mother was going to jail. Ms. Roy stated that she called the defendant, who stated that he was at the casino. Ms. Roy testified that she was on the telephone with the defendant when his mother and the police officer called him.

Discussion

On appeal, the defendant argues that (1) the evidence is insufficient to support his conviction; (2) the trial court erred in denying his request for new counsel; and (3) his sentence is unconstitutionally excessive.

Error Patent Review

A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence. The defendant was convicted of possession with the | fimtent to distribute cocaine and later adjudicated a double offender. The trial court initially sentenced the defendant to serve eight years at hard labor. After the defendant was adjudicated a double offender, the trial court vacated the prior sentence and resentenced the defendant to serve eighteen years at hard labor. However, the trial court failed to state that the defendant would not be eligible for probation or suspension of sentence and not eligible for parole for the first two years of his sentence. La.Rev.Stat. 40:967(B)(4)(b) provides that a person convicted of possession with the intent to distribute “shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation or suspension of sentence.” La.Rev.Stat. 15:529.1(A)(1) states that “[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.” Section G of the statute provides that “[a]ny sentence imposed under this Section shall be at hard labor without benefit of probation or suspension of sentence.”
Under La.Rev.Stat. 15:801.1 A and State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with the restrictions, even in the absence of the trial court’s failure to delineate the restrictions. Thus, there is no need for this Court to correct the sentence. See State v. Phillips, 2003-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.
| Assignment of Error No. 1
The defendant contends that the State failed to produce sufficient evidence to prove beyond a reasonable doubt that he had possession with the intent to distribute cocaine. When assessing the sufficiency of evidence to support a conviction, we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hy *1220 pothesis of innocence is excluded. La.Rev. Stat. 15:438. This statute, La.Rev.Stat. 15:488, is not a separate test from Jackson v. Virginia, supra, but rather is an eviden-tiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
To support the defendant’s conviction, the State must prove that he “knowingly” and “intentionally” possessed the cocaine with the “intent to distribute”. State v. Williams, 594 So.2d 476, 478 (La. App. 4 Cir.1992). Specific intent to distribute may be established by proving circumstances surrounding defendant’s possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1989). One need | snot actually possess the controlled dangerous substance to violate the prohibition against possession, constructive possession is sufficient. A person may be in constructive possession of a drug even though it is not in his physical custody if it is subject to his dominion and control. State v. Trahan, 425 So.2d 1222 (La.1983). Determination of whether a defendant had constructive possession depends on the circumstances of each ease. Among the factors to consider in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are (1) whether the defendant knew that illegal drugs were present in the area; (2) the defendant’s relationship to the person in actual possession of the drugs; (3) whether there is evidence of recent drug use; (4) the defendant’s proximity to the drugs; and (5) any evidence that the area is frequented by drug users. State v. Pollard, 93-1960, p. 13 (La.App. 4 Cir. 7/14/94), 640 So.2d 882, 888.
In the present case, Detective Du-rel testified that, in addition to the controlled purchase, he personally observed the defendant engage in five to seven narcotics transactions. The officer testified that during each transaction, the defendant accepted currency from the other person and either took an object from his pocket or went into the residence and returned to the person with an object. The officer also testified that that the cocaine found in residence was found in a bedroom that the defendant shared with his children. The individually wrapped pieces of crack cocaine were found in a dresser drawer which also contained a subpoena with the defendant’s name on it. The subpoena had the defendant’s address as 1823 North Galvez Street. The officer stated that men’s clothing was also found in the dresser. While Ms. Jackson testified that the defendant did not “live” with her, she acknowledged that the defendant stayed at the residence often |nand helped her with his children. Thus, the testimony presented was sufficient to prove that the defendant had possession of the cocaine with the intent to distribute.
The defendant also argues that the trial court erroneously allowed the State to introduce other crimes evidence, i.e., the criminal court subpoena found in the dresser drawer and the bullets found in the closet. This argument is without merit.. The discovery of the subpoena and the bullets during the execution of the search is clearly admissible under the res gestae exception. See La.Code Evid. art. 404(B). Under the res gestae exception, evidence of another crime is admissible “when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to the other crime.” State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1075. Fur *1221 ther, the testimony concerning the discovery of the bullets does not constitute other crimes evidence as there is no crime for the possession of bullets. Additionally, the jury was not made aware that the subpoena found in the dresser was related to another ease in which the defendant was charged. The trial court only allowed the State to introduce testimony that the police officers found a criminal court subpoena in the defendant’s name. There was no other reference made to the subpoena, and the subpoena was not published to the jury. Thus, the jury had no information to suggest that the subpoena was related to another crime. For all the jury knew, the subpoena could have been for jury duty or to be a witness in another case. Thus, this assignment is without merit.

Assignment of Error No. 2

The defendant asserts that his trial counsel was ineffective and, accordingly, that the trial court erred in failing to appoint new counsel when so requested. Specifically, the defendant alleges that trial counsel was ineffective at all stages— |prior10 to trial, during trial, and after trial — in failing to procure needed discovery, failing to object to inadmissible evidence, failing to put forth a valid defense to the State’s evidence, and failing to file post-trial motions.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel’s performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, supra. Thus, in order to prevail on a claim for ineffective assistance, a defendant must demonstrate a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. Strickland, supra. Although claims of ineffective assistance of counsel are most appropriately addressed through an application for post-conviction relief rather than direct appeal, State v. Truitt, 500 So.2d 355 (La.1987), where the record contains sufficient evidence to decide the issue, an ineffective assistance of counsel claim may be addressed on direct appeal in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993).
In the present case, the defendant argues that his trial counsel was ineffective throughout his representation and assigns numerous instances of where he contends counsel was ineffective. The defendant asserts that trial counsel was ineffective at the preliminary hearing because trial counsel was not hearing or understanding the testimony properly. The defendant contends that trial counsel mistook the word “internet” for “incident,” and confused the dates of the controlled purchase and execution of the search warrant. However, a review of the ^preliminary hearing transcript indicates that the only error supported by the transcript is where trial counsel mistook the witness saying “internet” instead of “incident.” The defendant has not shown how the deficiency prejudiced him and prevented a fair trial.
The defendant also contends that trial counsel was ineffective because he failed to file pre-trial motions and was not ready for trial, although he stated he was, because counsel had not obtained a return on the subpoenas he sought to aid in the defendant’s alibi defense. The defendant further contends that trial counsel was ineffective during his opening argument when *1222 he referenced the controlled purchase. The defendant also suggests that trial counsel was ineffective when he did not develop a valid defense that the small amount of drugs was only for personal use. The defendant suggests that trial counsel was ineffective in failing to object to hearsay information and allowing the search warrant and arrest warrant to be published to the jury. The defendant also contends that trial counsel was ineffective in failing to object to a jury instruction on flight by the defendant. The defendant further argues that trial counsel was ineffective in failing to file post-trial motions. These allegations of ineffective assistance of counsel cannot be determined on appeal and should be raised by the defendant in an application for post-conviction relief.
The defendant further suggests that trial counsel was ineffective in failing to object to the State’s failure to file a multiple bill of information in the record. This issue must be addressed on appeal because sentencing errors are not renewable post-conviction. La.Code Crim. Proc. article 930.3; State v. Brown, 2003-2568 (La.3/26/04), 870 So.2d 976; State ex rel. Melinie v. State, 93-1380 (La.1/12/96), 665 So.2d 1172. A review of the appeal record indicates that the defendant is | ^correct that there is no multiple bill of information in the record. However, the defendant was not prejudiced by trial counsel’s failure to object. The multiple bill hearing indicates that the State introduced testimony from its fingerprint analysis expert who testified as to the identity of the defendant as the person convicted in the present case and as the person who pleaded guilty on December 18, 2011, to the crime of possession of a stolen vehicle valued over five hundred dollars. The witness was subject to substantial cross-examination by defense counsel, which included questioning the methodology and expertise of the witness, prior to the trial court finding the defendant to be a second felony offender
This assignment of error is without merit.

Assignment of Error No. 3

Finally, the defendant contends that the trial court imposed an excessive sentence. After adjudicating the defendant a double offender, the trial court sentenced the defendant to serve eighteen years at hard labor. This sentence was three years over the minimum sentence the trial court could impose. See La.Rev.Stat. 40:497(B) and La.Rev.Stat. 15:529.1.
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 2000-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 2002-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
The trial judge’s failure to comply with La.Code Crim. Proc. article 894.1 does not automatically render a sentence invalid. The Louisiana Supreme *1223 Court has held that although Article 894.1 provides useful guidelines for the determination of the nature and length of a sentence, compliance with its provisions is not an end in itself. State v. Wimberly, 414 So.2d 666 (La.1982). Article 894.1 is intended to provide an impartial set of guidelines within which the trial judge’s sentencing discretion may be exercised. State v. Price, 403 So.2d 660 (La.1981); State v. Douglas, 389 So.2d 1263 (La.1980). Compliance with Article 894.1 further provides a record which is detailed enough to allow for a reasoned review of allegedly excessive sentences. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. A remand is unnecessary where the record clearly shows an adequate factual basis for the sentence imposed, even where there has not been full compliance with Article 894.1. State v. Boatright, 406 So.2d 163 (La.1981).
In the case at bar, the trial court did not provide reasons for the sentence imposed but noted that the defendant was a second offender, having been convicted of possession of a stolen automobile valued over five hundred dollars in December 2001. The trial court sat through the trial and recognized the danger the defendant put his children in when he sold narcotics from the residence in which they lived. The trial court heard testimony that the defendant refused to return to 114the residence, knowing that his failure to return would result in his mother’s arrest. The trial court also was aware that the defendant had other pending criminal charges, including possession of a firearm by a convicted felon. Thus, it cannot be said that the trial court abused its discretion in sentencing the defendant to eighteen years at hard labor.

Conclusion

We affirm the defendant’s conviction and sentence.
AFFIRMED.

. The defendant's mother, Diane Jackson, was charged in the same bill of information with possession of cocaine. She was found not guilty after a jury trial on April 21, 2010.