JUDE G. GRAVOIS, Judge.
^Defendant, Láwhit L. Paul, appeals his conviction and sentence for possession of cocaine with intent to distribute. For the reasons, that follow, we affirm defendant’s conviction and sentence. We further remand the matter for correction of the minute entries and the Uniform Commitment Order to reflect defendant’s proper conviction, as hereinafter set forth.

PROCEDURAL HISTORY

On October 31, 2013, the Jefferson Parish District Attorney filed a bill of information alleging that defendant violated La. R.S. 40:967(A) in that he possessed cocaine with the intent to distribute. On November 5, 2013, defendant appeared at his arraignment and pled not guilty.
On February 20, 2014, the trial court held a hearing on defendant’s motions to suppress evidence and statement and denied the motions. On May 13, 2014, Shana Travis appeared at a status hearing where defendant offered a note of evidence. Ms. Travis testified and submitted an affidavit stating that the qocaine in |aquestion belonged to her. On February 3, 2015, immediately preceding trial, defendant filed a motion in limine seeking to exclude alleged other crimes evidence, which was denied.
The case proceeded to trial before a jury on February 3 and 4, 2015. On February 4, 2015, the jury returned a verdict against defendant of guilty as charged. On February 6, 2015, defendant filed a motion for a new trial, which was denied that same day. Thereafter, on February 6, 2015, the trial judge sentenced defendant to two years imprisonment at hard labor to be served without the benefit of probation, parole, or suspension of sentence.[1]
. Defendant filed a motion-for appeal on February 6, 2015, before sentencing. The motion was granted on February 25, 2015.[2] Defendant’s appeal follows.

FACTS

Detective William Whittington of the Jefferson Parish Sheriffs Office testified that in August and September of 2013, he worked in the Project STAR Division, *193 dealing with violent crime and narcotics trafficking investigations.. At the end of August 2013, he began investigating narcotics activity at 4120 Lac Bienville Drive, Apartment D, in Harvey, Louisiana. He had been told that a black male with short hair in his /‘maybe, early thirties, late twenties” was selling drugs from that location. The man went by the nickname “Whit” and had two Infiniti sports cars, one white and one black. Detective Whit-tington began visual surveillance of the location. While he was conducting surveillance, he observed the subject whom he believed to be the target of his investigation, later identified Las defendant,[3] exit the apartment and meet with people who knocked on the door. This observation corroborated the information Detective Whittington had received.
Detective Whittington testified that he observed what he, through his training, understood to be “numerous” hand-to-hand transactions between defendant and people who had knocked on the door of the apartment. From the vantage point at which he was conducting surveillance, he could not see what was exchanged. However, upon observing one hand-to-hand transaction, the buyer was stopped and marijuana was found on his person.
As Detective Whittington continued surveillance of the apartment, he observed defendant leave- in a .white Infiniti. He had “patrol” conduct a stop of the vehicle. The officers conducting the stop learned defendant’s identity and relayed the information to Detective Whittington. The officers ran the subject license plate and learned that the car was- registered to a “Teresa Ruffin” with the Lac Bienville address.[4] Detective Whittington applied for a search warrant -for the Lac Bienville address based on the information gathered as a result of his surveillance.
Detective Whittington testified that on September 17, 2013, he and other officers in his division executed the search warrant at 4120 Lac Bienville Drive, Apartment D. It was “apparent” to Detective Whitting-ton that only a male lived there. He observed only men’s clothing and shoes and one furnished bedroom. The second bedroom appeared to be where defendant kept dogs that were found in the apartment. Detective Whittington testified that the officers found cocaine in the freezer of the apartment. There was a joint stipulation before the court that the six bags found in the freezer during the search contained a substance that tested positive for cocaine, and the weight of the cocaine was determined to be twenty-t;one grams. The officers also found another bag containing white powder in the refrigerator. It was further stipulated that this additional bag of white powder was inconclusive as to the presence of cocaine. . Detective Whitting-ton testified that baking powder, a white powder, is a common agent used to “cut” cocaine. He also stated that a digital scale was found in defendant’s bedroom,[5] along with Ziploc bags with “marijuana residue,” and a loaded magazine.[6] Detective Whit-tington stated that no gun was ever recovered, and the ammunition was not related to any charge in the present case. Detec *194 tive Whittington also testified that neither the scale nor the baggies were taken into evidence or tested for any narcotic residue.
Detective Nicholas Gamier of the Jefferson Parish Sheriffs Office testified that he started the investigation of defendant along , with Detective Whittington.[7] During their surveillance, Detective Gamier observed hand-to-hand transactions. They apprehended one buyer and discovered marijuana on his person. During the surveillance, it was established that Ms. Ruf-fin was associated with the Lac Bienville location.
Detective Gamier testified that on September 17, 2013, he participated in the search of defendant’s apartment. He did not ask for the “green leafy” residue found in the baggies to be tested, and the baggies were not kept in evidence. Detective Gamier testified that a digital scale box was found, but the actual scale was not located. He stated that the white powder found in the freezer tested positive for cocaine, but the white" powder found in the refrigerator was negative for cocaine. He did not have the cocaine tested for purity to' determine if it had been “cut” with anything. He observed a fake wall outlet in defendant’s bedroom 16that was “almost like a hide-away type safe,” but he did not test it for narcotic residue or take it into evidence.
Detective John Wiebélt of the Jefferson Parish Sheriffs Office testified’ that he was present during the search of 4120 Lac Bienville Drive, Apartment D, on September 17, 2013. He photographed the scene and identified and discussed the photographs he had taken. There were two pit bulls at the apartment, and the second bedroom appeared to , be where the dogs were kept. There was men’s clothing in defendant’s bedroom and closets. Defendant’s mail- and identification were found at the apartment. He identified a photograph showing Ziploc bags on which “marijuana residue” was found.- He stated detectives found a handgun box and ammunition; however, no gun was located. He photographed baggies, the box for a digital scale, and a fake electrical outlet that could be used to “secret” narcotics because these items could be indicative of distribution! He photographed the inside of the freezer where the cocaine was found inside, of a Tyson chicken bag. He photographed the baggies of cocaine from the freezer. The powder found in the freezer field tested positive for cocaine. The powder found in the refrigerator did not test positive for cocaine. The “Similac” found in the house is a baby formula, but there was no indication that a baby stayed in the house.
Detective Whittington testified that he and Detective Gamier located defendant and brought him in for questioning. He and Detective Gamier did not inform defendant about what had been found during the search, nor did they inform him of the location where the eocaine was found. Detective Gamier stated that he informed defendant that cocaine had been found, but he did not disclose its location.- When the officers asked where defendant kept his narcotics; he responded that he kept them in the freezer. Both detectives testified that defendant was read his rights and indicated he understood them. Detective Whittington |7stated that defendant was not threatened or forced into speaking with the officers.' However, Detective Gamier stated that defendant was informed that anyone associated with the *195 apartment could be subject to arrest concerning the cocaine. He denied threatening to arrest Ms. Ruffin in the event- that defendant did not take ownership of the cocaine. Thereafter, defendant gave the officers a recorded statement. , Detective Gamier testified that defendant never mentioned that the cocaine belonged - to someone else. He also related that defendant stated he ■ sold powder cocaine and gave officers unsolicited information concerning his clientele. As a result of these statements, defendant was booked with possession with intent to distribute cocaine. Defendant’s statement was published to the jury.
In his recorded statement, defendant stated he was read his rights and waived them. He agreed that the detectives' did not have to read him his rights again. When one detective asked defendant if he could advise him what narcotics were found in his apartment, he replied, “cocaine.” When asked where the cocaine was located in the residence,' defendant responded, “in the fréezer.” When the detective asked if defendant was taking full ownership of the cocaine, he responded, “yes sir.” Defendant confirmed that he lived alone at 4120 Lac Bienville Drive, Apartment D.-He stated that , his mother was out of town with her. boyfriend in Houston, and that she had been gone for about two months. Defendant confirmed that he was selling the cocaine. He stated that he did not have much cocaine packaged; he stated there were about two or three separate bags. Defendant admitted to smoking marijuana, but stated that he did not sell marijuana. When asked what he used the proceeds from his narcotics sales for,- defendant -responded that- he used it to pay his rent and bills. Defendant stated that times were hard, but he usually worked. He stated that he sold cars, cut hair, and worked on a garbage truck. He stated that he sold smaller quantities than “eight balls.”' He asked the Isdetectives if they had seen the bags and stated he sold them “like that.” Defendant stated that a small bag would sell for $35. He told the detectives that his mother owned the- two Infiniti cars. He also said that his clientele was a select group of people. He stated that he did not sell cocaine to people around his home because he did not trust them and thought they might break into his home. Defendant told the detectives that the cocaine was “powder.”[8] ' [9]
At trial, the defense presented an. alternate explanation for the narcotics being present in defendant’s apartment.. Ms. Travis testified that she first met- defendant in June of 2013; about three months before he was arrested, in this case. She stated that she was trying to purchase a car from him, and they had no other relationship apart from that business. One night in September, -she- stayed at his house after going-out before sh'e had to go to work. She testified that on the night she stayed at defendant’s apartment, she had gone to a club and purchased her usual twenty-one grams of cocaine from “T,” whom she identified as her drug deal *196 er. She bought the cocaine for $500-600. When asked how she could afford that much cocaine, making $405 a week before taxes at McDonalds, she explained that her family sends her money. She did not use any of the cocaine she bought that night while she was at the club. She stated that, she bought the drugs in one big bag, and she said it was not in smaller “twisties.”- She testified that she is a cocaine user, and she likes to “lace”. her marijuana with cocaine.
Ms. Travis stated, that she went to defendant’s house to rest before work.. A friend who lived.in the same apartment complex. dropped her off at defendant’s apartment.- -She-did not want to stay with her-friend because a lot. of other people lalived with her friend. Defendant, told her she could come “chill” at his apartment. She gave numerous reasons for being at defendant’s apartment, including to rest, to stay-the night,-to “chill” with defendant, to buy a car, and to change for work. She stated that she put the cocaine in the freezer so that she could lay down on the couch and also to keep it fresh. ! She stated that she put the. cocaine in a “Tyson chicken box.” The chicken was frost-bitten, so she thought it would be safe to hide the cocaine there because no one was going to look in the box to eat the chicken. She stated she put -the box back in the door of the freezer, and she could not explain why it was found compacted under other food when the: police searched the apartment. She stated she forgot the cocaine.-when she left for work at McDonald’s a short time later.[10]
Ms. Travis testified that defendant called her after he was arrested and informed her of what had happened. She stated that it was her fault because she had brought the cocaine to his house after the club that-night.' She said she had not spoken to defendant- since then because he was mad. Defendant was not her drug dealer, and she had never seen him sell or use drugs. She knew she could go to jail for her testimony in this case. She stated -that defendant did not give her any-money to testify. She said that no' lawyer had promised ’her anything for testifying or discouraged her from testifying." Ms. Travis stated she" wanted to do the right thing and “take her charge!”
Defendant also testified, in his own defense. He testified that he is. not a drug dealer, that he never gave the police permission to search his apartment, and that he did not know that they were doing so. Six or seven officers were present when he was being questioned, and that the conversation before he gave his .statement | mlasted for about forty-five minutes. He stated that they threatened to arrest his mother, Ms. Ruffin, because both of his cars were in her name. He only took ownership of the cocaine because the officers threatened to arrest his mother if he had not done so... The first time he saw the cocaine was when they questioned him. The recorded statement he gave was just him “selling [the officers] a good story” so that they-would not arrest his mother. He admitted to saying" in his statement to police that the cocaine was- in.the freezer, that' it was his, and that he sold cocaine. However, he testified that the officers informed him of the location Of the cocaine before he gave his statement. He told the police that he did not sell marijuana, but only smoked it because they did not find any in the apartment. He acted as though he knew what an “eight ball” was in order to make his story believable! He told the *197 police that he sold powder cocaine; but was just guessing to make the officers think he knew what he was talking about. - •
Defendant testified that Ms. Travis came over two days' before he was arrested at 2:45 a.m. to look at the car he was selling. This was the only time he had seen her in person. She had come over to “chill” because' she had nowhere else to go. When questioned about the.length of time Mr. Travis was at his apartment, defendant acknowledged that she said she was there for seven minutes, but he- did not know “exactly how much time she stayed there.” He said she looked at the car for two or three minutes and thought it was nice. He did not offer her any drugs, and he did not know she was on drugs. The two of them never had a sexual relationship. He called her a few days after his arrest, and that was'when she told him she had' left the drugs at his apartment. The officers booked him as having twenty-nine grams of cocaine, so he could not have informed Ms. Travis that the weight of the cocaine was twenty-one grams. Defendant testified that he ^neither offered -her anything nor threatened her in'relation to her testimony in this case.
Defendant testified that he made a living selling cars and cutting hair. He provided notarized documents relating’ to his car sales to illustrate how he made his money He stated that he “saved money well.” He testified that the “Similac” powder was for puppy milk because he had an entire litter die before. However, when pressed, he testified that “Similac” cannot be given to dogs, but qualified that the formula was not for babies but for puppies. He did not put. the cocaine, in the chicken nugget bag. He admitted that he occasionally smoked marijuana before and stated that he had previously pled guilty to-“possession,” but had no other convictions. Defendant testified that the bags with “marijuana residue” were not from illicit drug sales.
’ Lieutenant Shane Klein of the Jefferson Parish Sheriffs Office qualified as an expert in packaging, quantity, and value of narcotics. He had participated in thousands of cocaine investigations. He testified that twenty-one grams is a “rare” denomination, of cocaine to purchase. Such an amount of cocaine would sell for around $1,000-1,200, and if Ms. Travis had bought it for $500-600, it would have been at half its value. He added that the cocaine smelled strong. Lieutenant Klein looked at the cocaine recovered in the case and opined that it would not be typical for someone to possess such a large amount for personal consumption. Additionally, he noted ’that the smaller bags were packaged for sale in $100 and $200 increments, and this type of packaging was not consistent with simple possession. Lieutenant Klein stated that “Similac” is a cutting agent used-to increase profits, and he continued that the presence of “Similac” was “clearly”- indicative of possession with intent to distribute. He has seen drug dealers hide cocaine in a freezer to keep it from police or robbers, and hiding the cocaine in the 112freezer, especially with the frostbitten chicken, would have nothing to dó witli freshness.

ASSIGNMENT OF ERROR 'NUMBER THREE’

Sufficiency■ of the evidence[11]
In his third assignment of error, defendant argues that the trial court erred in *198 denying his motion for a new trial based on the State’s failure to prove possession with intent to distribute. Defendant challenges the sufficiency of the evidence as it relates to his conviction for possession with intent to distribute cocaine. Specifically, defendant argues that Ms. Travis came to court'twice and admitted under oath that the cocaine belonged to her, even under the threat of prosecution. According to defendant, this testimony provided reasonable doubt regarding possession. Defendant also contends the State offered no proof that defendant knew about the cocaine located in his apartment. He also asserts that the proof of intent offered at trial'was “flawed.”
The State argues that it presented sufficient evidence to rebut defendant’s theory that the cocaine belonged to Ms. Travis. The State further notes that it is not the function of the appellate court to assess credibility or reweigh the evidence.
Pursuant to La.C.Cr.P. art. 851, a motion for a new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-0282 (La.6/17/11), 63 So.3d, 1039. On appeal, a trial judge’s ruling on 'a motion for a new trial will not be disturbed absent a clear showing of an abuse of discretion. State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483, 490, writ denied, 12-2215 (La.4/1/13), 110 So.3d 139. Although this Court has recognized that the denial of a motion for a new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal, both the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances. Bazley, 60 So.3d at 19. Accordingly, we will do so.
The appropriate standard of review for determining the sufficiency of the evidence is whether after viewing the evidence in'the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a. reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
.The .rule as to circumstantial evidence is:. assuming every fact to. .be proved that the. evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.. La. R.S. 15:438. The reviewing .court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).
*199 |uIn the present case, defendant was charged with possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A). . To prove that offense, the State was required to show defendant knowingly and intentionally possessed cocaine and that he did so with the specific intent to distribute it. See State v. Haynes, 09-109 (La.App. 5 Cir. 2/9/10), 34 So.3d 325, 337, writ denied, 10-0493 (La.9/24/10), 45 So.3d 1073.
Defendant argues that because Ms. Travis testified under oath that the cocaine was hers, there is enough reasonable doubt as to the possession of the cocaine that the jury could not have found him guilty. Defendant does not contend that the location where the cocaine was found was not his home; instead, defendant asserts that he had no knowledge of the cocaine.
Possession of a controlled danr gerous substance can be established by actual physical possession or constructive possession, and the determination of whether sufficient possession exists to convict is dependent upoñ the facts of each case. State v. Major, 03-3522 (La.12/1/04), 888 So.2d 798, 802. In order to prove constructive possession of the controlled dangerous substance, evidence must show control or dominion over, as well as guilty knowledge of the contraband. Joint possession may be proven if a person willfully and knowingly shares with another the right to control the contraband. State v. Trahan, 425 So.2d 1222, 1226 (La.1983). Factors that may establish control or dominion necessary for constructive possession include -knowledge that the drugs were in the area, relationship with the person found to have possession; access to the area where the drugs were found, evidence of recent drug use, and physical proximity to the contraband. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910, 913; State v. Lewis, 04-1074 (La.App. 5 Cir. 10/6/05), 916 So.2d 294, 299, writ denied, 05-2382 (La.3/31/06), 925 So.2d 1257.
'lifiThe jury heard testimony from the officers who interviewed defendant, along with defendant’s own statement related to this case where he disclosed the location and form of the cocaine and detailed his sales practices. The officers testified that defendant knew the location of the cocaine and the fact that it was powder cocaine without them telling him where they had found the contraband or its form. The officers also testified that the apartment had only men’s clothes in it, and it did not appear that anyone apart from defendant resided there. Defendant does not assert that anyone else lived at the apartment. In light of the factors discussed above, the testimony suggests that defendant knew about the drugs, and since it was not contested that defendant was the only person living in the- apartment where the cocaine was found, that he had sole access to the contraband.
The jury also heard testimony from defendant that his confession was the result of the officers threatening to arrest his mother. He stated that he felt as though he had to sell the officers a good story because they had told him that they would arrest his mother unless he took pwnership of the cocaine. Defendant and Ms. Travis testified that defendant did not know about the contraband. Ms. Travis testified that she had put the cocaine in the freezer while she was there for a short time one night so that she could rest on the couch before going to work.
It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evalúa *200 tion under the Jackson standard of review. State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. State v. Mercantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56; Bailey, supra. After hearing both sides, the jury was in Lathe best position to determine whether defendant had guilty knowledge of the cocaine found in his freezer. Therefore, we find that as to the element of possession, a reasonable jury could have determined that defendant was in possession of the cocaine located within his home.
As to the element of intent to distribute, intent is a condition of mind which is usually. proven by evidence of circumstances from which intent may be inferred. State v. Hearold, 603 So.2d 731, 735 (La.1992). Multiple factors are to be considered in determining intent:, 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute. ’ Id. This Court has held that these factors are useful and that the evidence need not fall squarely within them for the jury to find sufficient evidence of the intent to distribute. State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 711, writ denied, 09-1316 ’ (La.03/05/10) 28 So.3d 1002.
In his recorded confession, defendant offered details about his drug sales and clientele; Also, the "State’s expert identified the “Similac” powder found in the home as an agent that would typically be used to cut cocaine to increase profits, and he even went so far as to say its presence “clearly” indicated possession with intent to distribute. • In addition, the expert testified that the amount of cocaine found was not typical of consumption or personal use, and that the cocaine was packaged' in such a way that was indicative of preparation for sale; The expert stated that he had seen drug dealers hide their “stash?’ in'the freezer in case of a police search or a robbery. The expert testified that he had conducted thousands of narcotics investigations,-and he has never heal’d of anyone buying in a twenty-one-t 7gram denomination. The expert testified that that amount of cocaine would sell for about $1,000-1,200, and the $500-600 Ms. Travis claimed she paid, for the cocaine would be about half of its market value. Further, the officers who conducted surveillance of defendant in the months leading up to the search of the apartment had received information from an informant about defendant selling drugs from the apartment and had witnessed hand-to-hand transactions. The stop of the buyer that was conducted after one of the hand-to-hand transactions resulted in the officers finding marijuana. Therefore, there was evidence of prior distribution of contraband by defendant, the cocaine was in a form ready for distribution, the amount was in excess of what would be typical of personal use, and officers found paraphernalia suggesting distribution.
Defendant testified at trial that he did not sell drugs. He insisted that his ine'ome was from selling cars and cutting hair. He stated that the “Similac” powder was used to feed puppies because he had previously lost an entire litter. Ms. Travis testified that she bought twenty-one grams of cocaine for personal use. She stated she typically bought that amount. Ms. Travis said she bought the cocaine for about $500-600. Shé also testified that defen *201 dant was not her drug dealer and that she had never seen defendant use drugs.
As previously discussed, it is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. See Mercantel, supra; Bailey, supra. The jury was in the best position to access the conflicting testimony presented, and we find that a reasonable jury could have concluded that defendant possessed the cocaine and that he intended to distribute it, even upon hearing Mr. Travis’ testimony. Therefore, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the | ^evidence was sufficient under the Jackson standard to find that defendant possessed cocaine with the intent to distribute.
Based on the forgoing, we find that the trial court did not abuse its discretion when it denied .defendant’s motion for a new trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER ONE

Denial of motion for a mistrial,
In his first assignment of error, defendant argues that the trial court erred in not granting his motion for a mistrial when the State, during rebuttal argument, insinuated that defendant had threatened a witness into testifying.
During rebuttal, the State asserted that the defense’s contention that Ms. Travis came in of her own free will to testify did not make sense. The State alleged, “I bet there is a nice new car that’s going to be waiting for her ... or maybe some bullets come flying her way:” Defendant did not object during rebuttal. Instead he waited until the jury retired for deliberation 'before moving for a mistrial. The trial court denied defendant’s motion for a mistrial.
In response, the State contends that this claim is procedurally barred from appellate review because defendant did not contemporaneously object to the prosecutor’s comment. The State further argues that the closing argument was within the scope of La.G.Cr.P. art 774 and that the jury was instructed that closing arguments were not to be considered as evidence; thus, any error would be harmless.
Upon review, we find that defendant did not properly preserve the issue for appellate review since he did not contemporaneously object to the alleged inflammatory statement made by the State. Defendant moved for a mistrial only after the jury had retired for deliberation. This Court has previously held that a | ^defendant who fails to object until, the judge is preparing to instruct the jury has not contemporaneously, objected as required by La.C.Cr,P. art. 841.[12] See State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1369, In Spencer, the defense objected after the State had concluded its rebuttal instead of immediately when-the contested, statement was made. This Court stated that the failure to contemporaneously object preyented the trial court from immediately remedying the situation if corrective action had been necessary, Id, Relying on Spencer, we find that defendant’s failure to object, during or after the State’s closing arguments prevents *202 him from raising the issue on appeal. Since defendant’s motion for a mistrial came only, upon the jury retiring to deliberate, the trial court did not have the opportunity to remedy the situation had corrective action been necessary. Therefore, we find that defendant is precluded from raising this issue on appeal.
In any event, we find that the State’s remarks were not so inflammatory as- to warrant a mistrial. Defendant.argues that a mistrial was.warranted in accordance with La.C.Cr.P. arts. .770 and 771 because the suggestion that defendant was tampering with a witness was-unfounded and improper. La.C.Cr.P. art. 770(2) mandates a mistrial, upon motion of a defendant, when a remark or comment is made by the district attorney within the hearing of the jury during the trial or in argument and refers directly or indirectly to “[another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.” La. C.Cr.P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a I ¡^nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1)' When the remark or comment is made by the judge, the district attor- : riey, or a court official, and the remark is not within the scope of Article'770;
[[Image here]]
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A-mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Smallwood, 09-86 (La.App. 5 Cir. 7/28/09), 20 So.3d 479, 489-90, writ denied, 09-2020 (La.9/24/10), 45 So.3d 1065; State v. Lagarde, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113-14, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion ' for a mistrial will not be disturbed absent an abuse of discretion. Smallwood, supra.
Upon review, we find that the statements made during closing were within the scope of argument, and the trial court did not abuse its discretion in denying defendant’s motion for a mistrial. The prosecutor has considerable latitude in making closing arguments; however, such latitude is not without limits. State v. Greenup, 12-881 (La.App. 5 Cir. 8/27/13), 123 So.3d 768, 775, writ denied, 13-2300 (La.3/21/14), 135 So.3d 617; State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 927, writs denied, 04-1640 (La.11/19/04), 888 So.2d 192 and 08-2370 (La.1/30/09), 999 So.2d 753.
La.C.Cr.P. art. 774 defines the scope of argument and rebuttal:
The argument .shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
li>iThe argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the .defendant.
*203 The trial judge has broad discretion in controlling the scope of closing arguments. Greenup, supra. A mistrial is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. Smallwood, supra. Further, a conviction will not be reversed due to improper remarks during closing arguments unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. Greenup, 123 So.3d at 775-76; Uloho, 875 So.2d at 927. In making this determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument and has been instructed that the arguments of counsel are- not evidence. Uloho, 875 So.2d at 928.
In the present case, defendant does not present any evidence to suggest that he was so prejudiced that he was deprived of a fair trial nor that the jury verdict was influenced by the statements insinuating defendant had paid ór threatened an exculpatory witness. Additionally, the court instructed the jurors before deliberation that the closing statements of counsel were not to be considered as evidence. Due to the broad latitude prosecutors are allowed during argument, we find that the trial court did not err in denying defendant’s motion for a mistrial based on the statement made during closing argument, and further that reversal is not warranted since the prosecutor’s remarks did not influence the jury or contribute to the guilty verdict. See Greenup, supra.
We further .find that defendant’s own counsel opened the door for such statements. ' In Smallwood, supra, ' this Court held that in the statements during I ^rebuttal closing argument that the defendant alleged were improper,-the State was -not referencing an .uncharged crime, but rather was remarking on the defendant’s own testimony. This Court held in Smallwood that comments alleged to be improper must be viewed in light of the context in which they are made. Likewise in the present case,, we find that the State’s remarks were in. response to what was brought up during .defendant’s own testimony. Specifically, during direct examination of defendant, defense counsel áskedj “[Djid you offer [Ms. Travis] anything to come in today, and. give this testimony,” and continued, “there’s been & lot of talk of bullets and guns. Did you threaten [Ms. Travis] with this gun that they never found?” Defendant responded, “No, sir.” As such, we Arid that defendant’s assertion that he had not 'improperly influenced the testimony of the witness in his defense allowéd the prosecution to attack such an assertion in their own case.
This assignment of error is without merit. ,

ASSIGNMENT OF ERROR NUMBER TWO

Admission of other crimes evidence

In his second assignment of error, defendant argues that the trial court erred in allowing the State to reference purported other crimes evidence when photographs and testimony were presented to the jury concerning baggies with untested “marijuana residue”- and ammunition. At trial, defendant moved for a mistrial in relation to Detective Whittington’s testimony that officers found bags with “marijuana residue” in defendant’s apartment, alleging that the introduction of the testimony was improper because the residue had never been tested, and it suggested that there were other drugs present at defendant’s residence.[13] The [^motion was denied be *204 cause the-trial court determined that the testimony concerning the residue was probative to the veracity of the witnesses because defendant admitted in his statement that he smoked marijuana.
The State argues on appeal that the evidence was properly referenced and admitted as res gestae, as the evidence' was seized in conjunction with the valid search warrant of defendant’s residence.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); State v. Davis, 08-165 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 303, writs denied, 08-2188 (La.5/1/09), 6 So.3d 810 and 08-2200 (La.5/1/09), 6 So.3d 811. The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. State v. Miller, 10-718 (La.App. 5 Cir. 12/28/11), 83 So.3d 178, 187, writ denied, 12-282 (La.5/18/12), 89 So.3d 1191, cert. denied, — U.S. -, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013) (citing Davis, supra). Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence will not be disturbed. Miller, supra.
La. C.E. art. .404(B)(1) provides that:
(l)Except as provided in Article 412, evidence of other crimes, ■ wrongs, or acts is not admissible to prove the character of a person in order, to show that he acted in conformity therewith, It may, however, be admissible , for other purposes, such as proof of. mo-five, opportunity, intent, - preparation, plan, knowledge, ■identity, absence of mistake or accident, provided that upon request by the accused, .the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the sübject of the present proceeding.
This Court has previously held that the discovery of bullets does not constitute other crimes evidence. See State v. Butler, 15-89 (La.App. 5 Cir. 7/29/15), 171 So.3d 1283, 1289-90 (citing State v. Dauzart, 11-688 (La.App. 4 Cir. 3/21/12), 89 So.3d 1214, 1221, writ denied, 12-914 (La.10/12/12), 99 So.3d 38). Upon review, we find in the present case that the picture and .testimony related to the bullets in defendant’s apartment are admissible as res gestae and do not constitute other crimes evidence. Therefore, we find that the trial court did not abuse its discretion in allowing the picture of the bullets and the testimony of the officers to be admitted into evidence.[14]
As to the baggies containing the “marijuana residue,” defendant filed a motion in limine and objected at trial to the State eliciting testimony concerning the untested residue. The trial judge denied the motion and overruled the objection stating that the testimony' concerning the baggies was relevant to the credibility of *205 the officers in relation to defendant’s statement that'he smoked marijuana. The record does not indicate that the prosecutor deliberately elicited the remarks supplied by the officers, and the bench conference concerning defense counsel’s objection shows that the prosecutor specifically instructed the officer to refer to the untested residue as a “green vegetable matter.” The prosecutor tailored his questions to the investigation upon which the prosecution was based. However, the officers provided unsolicited information. Nevertheless, inasmuch as the police officers are not court officials according to La.C.Cr.P. art. 770, the trial court did not err in refusing to grant an automatic mistrial under that article.[15] See State v. Jones, 07-533 (La.App. 4 Cir. 12/28/07), 975 So.2d 73, 77.
lsRSince defendant was not entitled to a mistrial under La.C.Cr.P. art. 770, the applicable article is La.C.Cr.P. art. 771, which provides that the trial court can grant a mistrial if an admonition is not sufficient to assure the defendant of a fair trial when a witness makes an irrelevant or immaterial remark or comment of such a nature that it might create prejudice against the defendant in the mind of the jury. However, the Fourth Circuit has held that the decision, to grant a mistrial or to give an admonition is within the sound discretion of the trial court, and the court’s ruling on whether to grant a mistrial for’a.-comment by a police officer referring to other crimes- evidence should not be disturbed absent an abuse of discretion. Jones, supra; State v. Harris, 00-56 (La.App. 4 Cir. 11/29/00), 780 So.2d 403, 415-16, writ denied, 00-3547 (La.11/9/01), 801 So.2d 358. A mistrial is warranted if substantial- prejudice will result which deprives the defendant of a fair trial. Harris, supra. In the present case, the officers were instructed to refer to the residue as “green vegetable matter,” and the trial judge determined that the, matter was probative to the veracity of the witnesses in relation to defendant’s confession. Additionally, defendant did not request an admonition. Therefore, we find that the trial'judge did not abuse his discretion in ’failing to give an admonition or grant a mistrial in response to the officer testifying that the residue was marijuana.
In any event, we find that even if tlie trial , court erred in admitting the alleged other crimes evidence, any such error is subject to a harmless error analysis. See State v. Davis, 993 So.2d at 306. The test for determining if an error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. Davis, supra. As discussed in the sufficiency analysis above, there existed ample evidence of defendant’s guilt concerning possession |aiiwith intent to distribute cocaine independent of the photos and testimony concerning the *206 bullets and “marijuana- residue.” Therefore, the admission of the photos and testimony related to the alleged other crimes evidence cannot be said to have contributed to the verdict. Therefore, we find that even if the trial court erred in admitting the alleged other crimes evidence,' such an error was harmless, as the guilty-verdict was surely unattributable to the error.
This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Only one matter merits attention. The minute entries for defendant’s trial and his sentencing and the Uniform Commitment Order state that defendant was convicted of distribution of cocaine. However, the record clearly reflects that defendant was charged with and convicted of possession of cocaine with the intent to distribute. Generally, where there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, defendant’s conviction should be memorialized as possession with intent to distribute cocaine in the minute entries and the Uniform Commitment Order. Accordingly, we remand the matter and order that the minute entries and the Uniform Commitment Order be corrected to reflect the proper conviction. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170 (citing State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142). We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which 127defendant has been sentenced and the Department of Corrections’ legal department. See Long, 106 So.3d at 1142 (citing La.C.Cr.P. art. 892(B)(2)).

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence áre affirmed. The matter is remanded to the trial court for correction of the minute entries and the Uniform Commitment Order to reflect defendant’s proper conviction, as hereinabove set forth.

AFFIRMED: REMANDED FOR CORRECTION OF MINUTE ENTRIES AND UNIFORM COMMITMENT ORDER

. Sentencing delays-were waived after the denial of defendant’s motion for a new trial.

. It is noted that defendant’s motion for appeal was prematurely filed because it was filed after the verdict was rendered but prior to sentencing. Although defendant’s motion for appeal was prematurely filed, defendant’s appeal is not premature since defendant’s motion for appeal was not granted until after defendant was sentenced. See State v. Proctor, 04-1114 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 484 n/4.

. Detective Whittington later identified defendant in court as the man whom he believed was the target of the investigation and the individual he had,§een conduct hand-to-hand transactions at the location being surveilled.

. A "magazine” is an ammunition storage and feeding device within or attached to a ; repeating firearm. .

. Detective Gamier identified defendant in court as the individual he interviewed in relation to this investigation.

. The remainder of defendant’s statement related to other outstanding attachments he had and an unrelated incident he had been involved in the night before the search warrant was executed.

. As a result of defendant's statement, Detective Whittington applied for two more warrants — one was a seizure warrant for personal property and the other was a search warrant for defendant’s vehicle. Upon executing the seizure warrant for defendant’s personal property, officers recovered $2,481.00. Detective Gamier stated that defendant never indicated that he could provide officers with receipts to legitimize the currency yielded from the seizure of his personal property. The search warrant for the car did not yield any cocaine.

. There exists some conflict in Ms, Travis’ testimony concerning hów long she was at defendant’s apartment. She testified'that she was there for as little;as fifteen, minutes and as long as forty-five minutes at different times during her testimony.

. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of:the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court, determines that the evidence was insufficient, 'then the defen *198 dant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id, Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to .an acquittal, and the reviewing court ^must consider the assignments of trial error to determine whether the 'accused is-entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed before defendant’s other assignments. See also State v. Nguyen, 05-569 (La.App. 5 Cir. 2/3/06), 924 So.2d 258, 262.

. La.C.Cr.P. art. 841 provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

. On appeal, defendant mentions that he moved for a mistrial before the trial court *204 when this evidence was presented to the jury. However, it appears from the record that defendant’s motion for a mistrial did not include the admission of testimony or photographic evidence related to the ammunition found at his residence.

. Further, as to the ammunition, it is noted that defendant did not properly preserve the issue for appellate review since he did not contemporaneously object to the introduction of the picture demonstrating the ammunition nor the related testimony. See La.C.Cr.P. art. 841, supra. The ammunition was not argued as part of defendant’s pretrial motion in li-mine, nor was it the subject of the defense’s objection and motion for a mistrial during Detective Whittington’s testimony at trial.

. La.C.Cr.P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, . refers directly or indirectly to: '
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against . the defendant in the'.mind of the jury;
(2) Another crime committed or. alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of" the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict. An admonition to the jury to disregard the remark or comment shall not'be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition ■ be given, the court shall admonish.the jury ■ to disregard the remark or comment but sjiall not declare a mistrial.